### HOWZE v. BARBER & DRENNAN.

1. A will must be construed according to the intention of the testator as disclosed by the language he has used, the will being considered as a whole.

2. A testator gave all of his estate to his wife, in consideration whereof the wife was charged with the raising and education of the children, "such education to be the best her means will afford. If any of our children should voluntarily refuse such education, they are not to receive any advantage in property in consequence of such refusal. My wife may give to any of our children at any time, and in the form and manner she may think best, any portion of property she may think proper: Provided, those to whom she had given shall be charged the full amount in the settlement of the estate." *Held*, that under this will the wife took an estate in fee simple, there being nothing in the subsequent clauses of the will to cut down the absolute interest conferred in the first clause.

3. The terms of the *proviso* in the last clause do not necessarily imply a division of testator's estate amongst his children, and only a necessary implication could cut down the absolute estate given in another portion of the same will.

4. There is nothing in this will to impress any trust upon the estate in favor of anybody.

5. The Circuit decree affirmed upon a ground other than that taken by the Circuit Judge.

Before WALLACE, J., Chester, October, 1887.

This was an appeal from the following Circuit decree:

It will be observed that there are no terms in the will to which the law attaches an arbitrary signification. We are, then, left to construe the will, guided alone by the cardinal rule that the intention of the testator is to be collected from a consideration of the whole instrument.

As words of inheritance are not necessary to the creation of a fee simple by devise, it is plain that, according to the first clause of the will, Mrs. Howze would take a fee simple estate in the land and an absolute interest in the personal property. The second clause does not affect the nature of the estate given by the first, but in terms *charges* the estate in her hands with the maintenance and education of the children. She, so far, takes subject to this burden. The third relates to the charge upon the estate created by the second clause, and restricts the charge to expenditures actually made for education. The fourth clause is a permission to the wife to give property to any of the children at any time and in any way that she may think best. This clause has no effect upon the estate of the wife, as it only grants what was necessarily implied in the first clause ; as one holding an absolute interest can give it when and to whom he may desire, but it aids in ascertaining the meaning of the testator in adding the proviso to this clause.

The proviso declares that any child to whom she had given should be charged with the full amount in the settlement of the estate. In other words, that such gift by the mother should be in the nature of an advancement, to be accounted for upon the settlement of the estate. So the testator contemplated a settlement of the estate—a final disposition of it. He did not intend this to be immediately upon his death, for then his wife was to take the estate, charged with the education and maintenance of the children, and while she had it she was permitted to give portions of it away at any time. There was no period of time fixed when this power of the wife was to cease, and therefore continues during her life, and that she may exercise it for that period, she must hold the property for that period. So the settlement contemplated by the testator could not take place during the life of the wife, but as there was to be a settlement, and a final one, at some time, and it could not take place during the life of the wife, and there was no express limitation beyond her life, the testator must have had the time of the death of his wife in his mind as the point of time for the final distribution of his estate among his children.

If this, then, is a correct interpretation of the fourth clause

and the proviso to it, that clause and the proviso have the effect to cut down the estate devised in the first clause to a life estate with remainder to the children.   The will is inartificially drawn, and its provisions at first view seem conflicting, but the more I consider it, the more fully am I convinced that the testator intended to give his estate to his wife for life, charged with the maintenance and education of his children, with remainder to the children, and that he did not intend that the charge for maintenance and education should consume the estate, but be in proportion to and paid out of the rents, issues, and profits of his property.

It is adjudged, therefore, that Mrs. Sarah A. Howze has a life estate under her husband's will, charged with the maintenance and education of his children, and that these children are entitled to the remainder after the life estate.   It is further ordered, that the prayer of the bill for a perpetual injunction be refused, and the complaint dismissed.

Other matters are stated in the opinion.

*Mr. G. J. Patterson*, for plaintiff.

*Mr. G. W. Gage*, for children of plaintiff.

*Mr. A. G. Brice*, for the judgment creditors.

October 23, 1888.   The opinion of the court was delivered by Mr. Justice McIver.   The appellants, Barber & Drennan and Whitesides & Marion, having recovered judgments against the plaintiff in her individual capacity, levied upon a tract of land upon which the plaintiff with some of her children resided, whereupon this action was commenced to enjoin the sale, upon the ground that Mrs. Howze has no leviable interest therein, but that she simply holds the same as trustee of her children, all of whom are made parties to the action.

It seems that the land in question originally belonged to plaintiff's testator, who died in 1867, leaving his widow, the plaintiff, and the several children named in the complaint, some of whom were then, and some are yet, minors.   The widow and children

continued to live together on the land, until some of the children attained their majority and moved off to themselves, and the judgments under which the land has been levied on were based upon notes given by Mrs. Howze to close accounts contracted by her, in the purchase of articles for the use of herself and children and for plantation expenses during the years 1873, 1874, 1875, and 1877. It also appears that there is an unpaid debt of the testator, which has been reduced to judgment against the plaintiff as executrix, but the holder of that judgment is not a party to this action. The will of the testator, under which the land in question passes, is as follows:

"*First.* I give to my wife, Sarah A. Howze, whatever property I may have at the time of my death, both real and personal, with whatever may accrue to me thereafter, by will or otherwise, were I living.

"*Second.* In consideration of the foregoing, I charge my wife with the raising and education of my children. Such education to be the best her means will afford.

"*Third.* If any of our children should voluntarily refuse education, they are not to receive any advantage in property in consequence of such refusal.

"*Fourth.* My wife may give to any of our children, at any time, and in the form and manner she may think best, any portion of property she may think proper: Provided, those to whom she had given shall be charged the full amount in the settlement of the estate.

"*Fifth.* I appoint my wife, Sarah A. Howze, executrix of this my will."

The Circuit Judge held that, under a proper construction of this will, the plaintiff took an estate for life, charged with the maintenance and education of the children, for which purpose only the rents and profits of the property could be used, with remainder to the children, and he rendered judgment that the prayer for a perpetual injunction be refused and that the complaint be dismissed. From this judgment the plaintiff, and those of the defendants who are named as appellants, have appealed upon the several grounds set out in the record; but as the real and controlling question presented for our determination is as to

the proper construction of the will, these grounds need not be set out in detail here.

It is quite apparent, from the extremely inartificial terms used, that the testator was *inops consilii* when this will was prepared, and there being almost an entire absence of such terms as have received judicial construction, we cannot expect to derive much aid from decided cases in arriving at the proper construction of the will, but must depend largely upon well settled general principles which experience has shown to be useful in determining the proper construction of a will. The cardinal rule is to seek for the intention of the testator, not by resorting to conjecture as to what was likely to have been his intention, but by a careful consideration of the language which he has used, aided by such rules of law as may be applicable. We are to read the will as a whole, and from its terms ascertain, as near as practicable, what was in the mind of the testator when the will was executed.

It is quite clear that if the first item of the will stood alone, that Mrs. Howze, under it, would take an estate in fee simple in all of the real estate of the testator and an absolute interest in the personalty; for, under our statute, no words of inheritance are necessary to create such an estate by will, and the words used are amply sufficient to vest an absolute estate in her. So that the practical inquiry in this case is, whether there is anything in the subsequent clauses of the will sufficient to cut down the fee to some lesser estate, or to attach to it any trust whatsoever. We are unable to discover anything in any of the subsequent clauses which would be sufficient to show that the testator intended to cut down the estate manifestly created by the first clause to a life or any lesser estate, or that he intended to affect it with any trust enforcible in a court of equity. The rule, as we understand it, both of law and of common sense, is that where an absolute and unqualified estate is first created in words which import absolute and uncontrollable ownership, words relied upon to show that the testator intended to cut down such an estate, or to affect it with any trust, must not only be mandatory, but must in themselves show the manner in which they are to operate, so that the purpose of the testator may clearly appear—how or in what degree he intended to cut down the estate previously created, or what

was the precise nature of the trust he intended to impress upon it. 2 *Story Eq.*, § 1069; 2 *Pom. Eq. Jur.*, §§ 1014 *et seq.; How-ard* v. *Carusi*, 109 U. S., 725; *Lesesne* v. *Witte*, 5 S. C,, 450.

Now let us examine the subsequent clauses of the will, for the purpose of ascertaining whether any such words can be found. The second clause clearly contains nothing calculated to affect the nature of the estate conferred by the first clause. It simply enjoins it upon the wife that, in consideration of the absolute and unqualified estate just given to her, she shall assume the burden of the raising and education of the children. It charges her personally, not the estate just given to her, with that duty. This is shown by the language used—"I charge *my wife* with the raising and education of my children." He does not charge *the property*, or give it to the wife subject to such charge, but simply charges *her;* and the additional injunction—"Such education to be the best *her means* will afford"—not the best that the property given to her will afford, but the best that *her means* will afford, whether such means should be derived from the property given to her or from any other source, strengthens this idea. It was as though the testator had said to his wife: I have given you this property absolutely with the expectation, or, to state it more strongly, with the requirement that you shall raise and educate the children; and if the wife has complied with this requirement (and we presume she has, as we hear no complaint to the contrary, for the youngest child must be now very near, if not quite, twenty-one years of age, inasmuch as the testator died in 1867, as stated by the Circuit Judge in his decree, though the complaint does allege that he died in 1869, of which, however, we find no evidence), then it would seem that there is now no longer, if there ever was, any limitation of the wife's absolute right of ownership, growing out of the duty to raise and educate the children. But even if the Circuit Judge was in error in fixing 1867 as the date of testator's death, and that in fact he did not die until 1869, as alleged in the complaint, that would not affect our view; for there is no evidence that the land in question is necessary to complete "the raising and education" of such of the children as may yet be minors. It seems to us, therefore, that the most that can be said in regard to the effect of the second clause

is that it imposed a personal duty—not a charge upon the estate previously conferred upon her—to raise and educate the children; and that even if it could be regarded as affecting the estate with a trust for that purpose, such purpose has either been accomplished, or if it has not been fully, there is no evidence that the land in question is necessary to its full accomplishment.

The third clause clearly contains nothing which would serve to reduce, limit, or in any way qualify the estate created by the first clause. Its only purpose seems to have been to repel the inference that any child who declined to receive the benefit provided for him in the second clause—an education—should, in lieu thereof, be entitled to receive anything else. The testator's idea seems to have been that having in the second clause provided a benefit for his children in a certain way, those who failed or refused to receive such benefit in the way prescribed, should not thereby be entitled to receive an equivalent in any other way. He in effect said to his children: If you do not choose to accept my bounty in the form in which I choose to bestow it, you shall not receive an equivalent therefor in any other form.

It only remains to consider the fourth clause, which, it must be confessed, is obscure and difficult of construction; that is to say, it is very difficult so to construe it as to conform the intention, which might be implied from some of its terms, with other intentions plainly expressed in the will. This clause, without the proviso, plainly confers no more power upon the wife than would be necessarily implied from the terms of the first clause; but this circumstance is not entitled to much weight in construing a will so inartificially drawn as this. Indeed, we may naturally expect in such cases to find that the testator, in the effort to express his meaning, would employ more words than were necessary, and by needless repetition raise doubts as to what was his real intention. *Moore* v. *Sanders*, 15 S. C., 442; *Canedy* v. *Jones*, 19 *Id.*, 300. The words, however, plainly show that the testator did not intend that his wife should be bound to give any of the property to any of her children, as the word "may" is permissive merely and not imperative; and they also show that the time, the form, and the manner of the gift was to be absolutely at the discretion of the wife—"my wife *may* give to *any*

of our children at *any time*, and *in the form* and *manner she may think best* any portion of the property *she may think proper*." It would be difficult to use terms conferring a larger or more absolute discretion. Under these terms the wife was invested with full power to give to *any* of the children *any portion*—ninetenths of it, if she thought proper—at *any* time, either during her life or at her death, in any form, either by parol gift, deed, or will; in any manner, either absolutely in fee simple, or for life with remainders, or in trust for some specified purpose. Indeed, these words show that the testator intended to invest his wife with precisely the same power of disposal of this property to the children as an absolute owner enjoys, and though all this would be implied from the nature of the estate created by the terms of the first clause, yet its repetition, though needless, serves to emphasize the intention disclosed by the terms of the first clause.

It is contended, however, that this absolute power of disposal is qualified by the terms of the proviso, which is in these words : "Provided, those to whom she had given shall be charged the full amount in the settlement of the estate," which, it is argued, show that the testator intended that at some time there should be a division of the estate amongst all of the children. Such an intention is certainly not in terms expressed in the proviso, and the most that can be said is, that it is implied. Is such an intention to be necessarily implied from the terms of the proviso? for unless the implication is a necessary one, it surely cannot serve to restrict or limit a power previously conferred in clear and unmistakable terms, or to cut down an estate which has been previously created in the plainest language. Now, even if it be conceded that the natural inference to be drawn from the terms of the proviso, standing alone, or rather, not in conflict with any other intention which has previously been expressed in plain terms, would be that the testator contemplated and intended that the whole of his property should be at some future time divided amongst his children, it would still be necessary to inquire whether any other inference can be drawn, not in conflict with such previously expressed intention ; for one of the cardinal rules of construction is that all parts of the will shall, if practicable, be harmonized.

We must, therefore, inquire whether any other inference than

that which may be conceded to be the most natural one, can be drawn from the terms of the proviso. It seems to us that another inference may be drawn from the terms of the proviso, which will bring the intention to be implied from those terms into full harmony with the previous plainly expressed intentions of the testator. He may have contemplated a division amongst all of his children at some future time—not of the whole of the property given to his wife, over which he had invested his wife with the full power of disposal—but only so much thereof as might not be disposed of by her during life, or by will at her death, and that in that event, and upon such division, the children who had received property from their mother should be charged with the same. It is clear, therefore, that the words of the proviso do not *necessarily* imply that the entire property of the testator was at any time to be divided amongst his children, but that, on the contrary, an inference may and must be drawn from those words which will not bring the intention thereby indicated into conflict with the previous plainly expressed intention of the testator.

Having thus considered in detail the several clauses of this will, let us now look at it as a whole. The first thing that strikes us from such a view is, that the testator had in his mind two prominent intentions—first, to provide for his wife, and second, to provide for "the raising and education" of his children. Accordingly we find that in the very first clause he gives his entire estate, in the most unqualified terms, to his wife, and in the second he makes what he manifestly regarded as ample and sufficient provision for raising and educating his children. He evidently thought that it was more important to give them education than property; and it is worthy of especial note that he nowhere in terms gives them any property whatever. On the contrary, he seems to have left that entirely to the discretion of his wife; and possibly fearing that the duty or injunction placed upon her to provide for the raising and education of the children might impair her right to give them any property, he takes care to provide against that by investing her with the fullest and most ample discretion in that respect. He may have had, and doubtless did have, some vague notion that, in certain contingencies,

there might be a division amongst the children; but if he had any well defined intention of that sort, it is strange that he gave no directions to that effect, and made no provision as to the time when, or the manner in which, such division should be made. We are unable to discover anything in the terms of the will indicating an intention on the part of the testator to cut down the absolute estate conferred on the wife by the first clause to a life estate, with remainder to the children. If such was the purpose, it seems to us that it would occur to the plainest and most uneducated mind that some word or phrase indicating such a purpose should have been used; but we find no such word, nothing said about life estate or remainder, and nothing said as to what was to become of the property at the death of the wife.

In this connection it is not unworthy of note, that even if it could be inferred from the terms of the will that the testator intended to give his wife an estate for her life, with remainder to her children, there is nothing to indicate which of the children should be entitled to share in such remainder, whether those who survived the wife, or all of them, without regard to survivorship; nor is there any provision as to the manner of such division— whether equally or otherwise. On the contrary, one of the provisions of the will necessarily implies that the children might not be entitled to equal shares, for the wife is invested with the fullest discretion to give off *any portion* of the property she may think proper to *any* of the children, and if, in the exercise of such discretion, she thought proper to give to one of the children two-thirds, three-fourths, or any other unequal proportion of the property, there certainly could not be an equal division of all the property amongst all of the children. So, too, under the large discretion conferred upon the wife as to the form and manner of the gift, she might give a portion of the property to one of the children for life, with remainder to his children, to another she might give a portion in trust for his wife and children, and to another she might give absolutely; and this would be manifestly inconsistent with the idea that the testator intended his wife to take an estate for her life, with remainder to the children, to be equally divided amongst them.

It is also contended that the testator intended that his wife

should take the estate given to her impressed with a trust, but exactly what the nature of the trust should be seems to be a matter for difference of opinion, even amongst the parties interested. If there was any trust at all, it must have been either a trust for the raising and education of the children, under which the wife would be a naked trustee, with no beneficial interest whatever, or it must have been a trust for the support of herself and for raising and educating the children. To say nothing of other considerations, the idea that the testator intended that his wife should take no beneficial interest whatever under the terms of his will is so utterly inconsistent with the other provisions therein contained as to be wholly inadmissible. Nor could a trust for the support of the wife and for raising and educating the children be implied, for there is nothing whatever said in the will about supporting the wife, and unless she takes a beneficial interest under the first clause of the will, which is plainly an absolute interest, we see nothing in any of the other provisions under which she could claim any beneficial interest at all.

It seems to us, therefore, that under a proper construction of the will, the plaintiff took an absolute estate in the property, and that the same is liable to be sold for her debts. For this reason, then, and not for the reason assigned by the Circuit Judge, we concur in the judgment which he has rendered—that the injunction be dissolved and the complaint dismissed.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.