ARNOLD v. ARNOLD.

1. DEVISE—YOUNGEST CHILD—PARTITION.—Testator devised and bequeathed his plantation and other property to the four children of his son W. by name, their heirs and assigns forever, after-born children of W. to share equally with these four, the place to be kept up until W. died, if that happened before his youngest child comes of age, and if not, then to be divided when the youngest child of W. comes of age, and each to have his share; and the grand-children were "admonished and charged," and the gift was "made in the hope and upon the trust," that they would so provide. W. was appointed executor and guardian of his children, and the property was left under "his care and control, until his youngest comes of age, or as long as he may live." *Held*, that the words, "youngest child," as used in this will, did not mean the youngest child which W. might at any time have; and, therefore, the youngest child born before testator's death having become of age, partition between all the children could be demanded as of right, proper provision being made to secure the rights of after-born children of W.

2. IBID.—TESTAMENTARY WISH.—The devise to these grand-children was not affected with any legal charge or trust, as the words used by testator, after the absolute gift, amounted to only the expression of a wish and hope— were merely advisory.

3. PARTIES—CAPACITY—ACCOUNTING.—Where an executor and testamentary guardian is not made a party defendant in such capacity, though made a party individually, he cannot be called upon to account for his trust; but it is proper to permit an amendment so charging him.

Before NORTON, J., Abbeville, June, 1893.

Action by Andrew L. Arnold and Rebecca J. Simpson against John L. Arnold, W. J. Arnold, and others. The master, to whom all the issues were referred, reported that there could be no partition until the death of Wm. J. Arnold; that he was not made a party in such capacity that he could be required to account; that whatever the grand-children took, they took subject to a charge and trust; and that it did not appear that plaintiffs were being deprived of their rights in the land.

To this report the plaintiffs filed the following exceptions: 1. Because the master erred in holding that the will of Hart P. Arnold created a charge on said land in favor of his son, William J. Arnold, and that, therefore, no partition could be

had at this time. 2. Because the master erred in holding that
it was impossible to tell at this time who would be the young-
est child of William J. Arnold, and that, therefore, no parti-
tion could be had at this time. 3. Because the master erred
in holding that there could be no partition, because William
J. Arnold was not made a party in his capacity as executor,
when it is alleged in the complaint that he is the executor, and
when the same point had been made before Judge Izlar, and
overruled by him. 4. Because the master erred in holding
that it did not appear that the plaintiffs were being deprived
of their rights in the premises, when it is alleged in the com-
plaint, and not denied in the answer, that the defendants were
in possession of the land, that they refused to make partition
of it, and refused to allow the plaintiffs their share of the rents
and profits. 5. Because the master erred in not stating his
findings of fact and his conclusions of law separately, as re-
quired by law. 6. Because it was error in the master not to
hold that the land should be partitioned among the parties ac-
cording to their respective rights, when it is admitted in the
pleadings that the plaintiffs are tenants in common with the
defendants.

The circuit decree was as follows:

H. P. Arnold, by his will in 1869, devised certain lands to
Mary Ann Arnold, John Lewis Arnold, Andrew Lee Arnold,
and Rebecca J. Simpson, children of Wm. J. Arnold, as a class,
with the provision that after-born children of the said Wm. J.
Arnold should share in said devise. Since the execution of
the will, Samuel Petis Arnold and Belinda Francis Arnold
have been born unto the said Wm. J. Arnold. The said H.
P. Arnold died, and since his death Mary Ann Arnold has
died. The will provides that Wm. J. Arnold shall manage
the estate until his youngest child shall come of age, or he die,
at which time he directs a partition, which is not to be sooner
made. Also appoints the said Wm. J. Arnold executor and
"testamentary guardian of the provision made for his child-
ren." The latter expression is equivalent to "trustee for his
children during the period mentioned," and his management

of the estate was to be after payment of debts as trustee. Wm. J. Arnold is alive and seventy-two years old. The youngest child of Wm. J. Arnold is twenty-one years old.

Plaintiffs ask that partition be now made. Defendants say that Wm. J. Arnold may yet have children born unto him, which I hold to be true, both in law and fact. No partition can, therefore, be now had.

Plaintiffs allege the community of interest with the other surviving children of Wm. J. Arnold, and that Wm. J. Arnold and his codefendants are in possession of the land, and refuse to allow plaintiffs to occupy with them, or to give plaintiffs any part of the rents and profits. Defendants allege that the estate of the children of Wm. J. Arnold is burdened with a trust to support him and his wife during their lives, based on this provision of said will, to wit: "And I admonish and charge my said grand-children this gift is made in the hope and upon the trust that they will provide for their parents during their lives." I do not think that this provision imposes a trust upon the estate given to the children of Wm. J. Arnold; they, therefore, are entitled to the rents and profits now. I think the pleadings are sufficient to order the trustee and his codefendants to account for and turn over to plaintiffs their shares thereof.

It is ordered and adjudged, that the 2d and 6th exceptions to the master's report be overruled. That the other exceptions thereto be sustained, in so far as they complain that the master found plaintiffs are not entitled, under the pleadings, to recover their shares of the rents and profits in said lands. That the said defendants do, from time to time, during the present year as the crops are gathered, pay and turn over to the plaintiffs each one-fifth of the rents, issues, and profits arising from said lands, according to the usual rents of the vicinage for such lands. That Wm. J. Arnold do resume the sole management and control of said lands as directed in said will, and turn over the rents to his children, according to their respective interest thereunder, and as hereinbefore declared. That the complaint herein be retained until one of the periods for the partition shall have arrived, if the plaintiffs so elect.

The plaintiffs and W. J. Arnold appealed.

*Mr. Eugene B. Gary*, for W. J. Arnold.

*Messrs. Graydon & Graydon*, for plaintiffs.

April 20, 1894. The opinion of the court was delivered by

MR. CHIEF JUSTICE McIVER. H. P. Arnold died many years since, leaving a will which, we infer from the decree of the Circuit Judge, was executed in 1869, though the date of the will is left blank in the copy exhibited with the complaint. Omitting the formal parts of the will, its provisions are as follows: "*Third.* I give, grant and devise my plantation or farm, lying and being in Abbeville District, on the waters of Coronaca Creek, containing five hundred and fifty acres, and upon which I now reside, and also all my other property real and personal of every nature and kind whatever to the children of my son, William, viz: Mary Ann Arnold, Rebecca Jane Arnold, Andrew Lee Arnold and John Lewis Arnold their heirs and assigns forever. This provision is made for my grandchildren, the children of my son William J. Arnold, as a class, and if William J. Arnold has other children, born to him in lawful wedlock, I wish the children so to be born to have an equal share of this provision. If any of my said grand children or those which may yet be born, should die without leaving child or children living at their death, then the share of such child to go to his brothers and sisters. I further desire that my place and farm should be kept up and not be divided, but carried on under the direction of the executor hereinafter named until my said executor, William J. Arnold, shall die, if that should occur before his youngest child comes of age, and if not the property, land and personalty, to be kept together until the youngest child of William J. Arnold comes of age, when I desire the property to be divided and each to have their share, and I admonish and charge my said grand-children that this gift is made in the hope and upon the trust that they will provide for their parents during their lives. *Fourth.* I nominate, constitute and appoint my beloved and dutiful son, William J. Arnold, sole executor of this my last will and tes-

tament.   I appoint him also testamentary guardian of the pro-
vision herein made for his children.   I leave it all under his
care and control until his youngest comes of age, or as long as
he may live, believing that he will do his duty to his children
and preserve the property for them."

The plaintiffs, two of the children of William J. Arnold,
bring this ation against all of the other children who are now
in existence, mainly for the purpose of obtaining partition of
the land, making William J. Arnold, individually, but not as
executor, and one J. Frank Kellar, who is alleged to be in pos-
session of sixty-five acres of the land, parties defendant.   From
the report of the master we gather the following facts, which,
under the view we take, are all that appear to be pertinent to
the issues presented by this appeal, viz: that subsequent to
the making of the will of H. P. Arnold, two other children,
besides those named therein, have been born to William J.
Arnold, and one of those named in the will has died; that Wil-
liam J. Arnold is still living and is now seventy-one years of
age, and that his wife is also alive and has passed the age of
sixty years; that the youngest child of William J. Arnold now
in existence, has attained the age of twenty-one years.   It may
be as well to say here, that if there is any real issue as to the
rights of the defendant Kellar, they do not appear to have been
considered or passed upon in the court below, and, therefore,
we cannot consider them here.   The master having made his
report, in which he recommended that the complaint be dis-
missed, the plaintiffs excepted thereto, and the case was heard
by his honor, Judge Norton, upon said report and exceptions,
who rendered the decree set out in the "Case," which should
be incorporated in the report of this case.   From this judg-
ment the plaintiffs, as well as the defendant, William J. Ar-
nold, appeal upon the several exceptions set out in the record.

We do not propose to consider these exceptions in detail,
but rather to decide what we regard as the material and con-
trolling questions raised by such exceptions.   It seems to us
that there are really but three questions necessary to be con-
sidered in this case: *First.* Whether the period for partition of
the land devised to the children of William J. Arnold has yet

arrived. *Second.* Whether such partition can be made without first providing for the performance of the alleged trust, with which it is claimed the devise to the children is affected, for the support of their parents, which, of course, involves the inquiry whether such trust was created so as to be legally binding upon the children. *Third.* Whether the pleadings are so framed as to entitle the plaintiffs to an account from the said William J. Arnold, either as executor or as testamentary guardian.

It must be conceded that the solution of the first question is attended with some difficulty. It is clear, however, from the language used by the testator in the third clause of his will, that he contemplated two periods at which he intended that partition should be made; first, the death of his son; second, the time when his youngest child should come of age. But the difficulty is to determine what the testator meant by the terms "youngest child." Did he mean the youngest of those children named in the will, or did he mean the youngest child which might be born to his son during the lifetime of the testator, or did he mean the youngest child which might at any time be born to his son? If he meant either of the two first alternatives, then it is clear that the period for partition has arrived, for the facts are undisputed that the testator is dead (the period at which his will took effect) and that the youngest child yet born to the son, William J. Arnold, has attained the age of twenty-one years. But if he meant the last alternative, then it is equally apparent that neither of the periods at which partition was to be made has yet arrived, for W. J. Arnold is still alive, and the law recognizes the possibility that there may yet be another child born to W. J. Arnold, notwithstanding the strong improbability of such an occurrence, arising from the advanced ages of Arnold and his wife. See the authority cited by counsel for W. J. Arnold, 2 Bl. Com., page 135.

So that the inquiry is narrowed down to the question whether the testator meant by the terms "youngest child" the youngest of the children that might thereafter be born to his son. It seems to us that the language used by the testator precludes

the idea of any such intention. Let us repeat his language in this connection: "I further desire that my place and farm should be kept up and not be divided, but carried on under the direction of the executor hereinafter named, until my said executor, William J. Arnold, shall die, if that should occur before his youngest child comes of age, and if not the property, land and personalty, to be kept together until the youngest child comes of age, when I desire the property to be divided, and each to have their share." This language shows conclusively, that the testator contemplated the possibility of the period at which he desired the division to take place, arriving before the death of William J. Arnold, to wit: when his youngest child should come of age; and if, as we have seen, the youngest child of W. J. Arnold could not possibly be ascertained until after his death, it follows, necessarily, that the testator must have meant the youngest of the children named in the will, or, at least, the youngest child living at the time of testator's death, when his will took effect, and could not possibly have meant the youngest child that might, possibly, thereafter be born to W. J. Arnold.

And when it is seen that immediately after the words last quoted, the testator added the admonition to his grand-children to provide for their parents during their lives, it shows plainly that the testator contemplated a partition of the property during the life of their father, when the children were "each to have their share," and for this reason he admonished them still to provide for their parents. Indeed, the very fact that the testator did not provide for postponing the partition until the death of his son, shows that such was not his intention; for if he had so intended, it would have been very easy and most natural to say so; but he did not so say, and, on the contrary, his language necessarily implies that he did not so intend. So that to interpret the terms "youngest child" as meaning the youngest child that might possibly be born to the said William J. Arnold, would be to so construe the will as that no partition could be made until the death of W. J. Arnold, and nine months thereafter, which would be to defeat, rather than to carry into effect, the intentions of the testator,

and, therefore, such a construction cannot be adopted. We are of opinion that the time for partition has arrived, and that the same may now be made by making proper provision, as is usual in such cases, to secure the rights of any child which may possibly be hereafter born to the said William J. Arnold.

As to the second question, we agree with the Circuit Judge that the property devised to the children of William J. Arnold is not affected with any such trust in his favor as would be *legally* binding upon the children. In 6 Cruise Dig., chap. 10, sec. 7, it is said: "Words of advice, recommendation or desire do not create a devise, nor will they operate so as to raise a trust in equity, unless the property is certain, and persons to whom it is given clearly described; *and even in that case such words are not in general deemed imperative or legatory, where they are inconsistent with the antecedent right or interest devised to that person to whom they are addressed; for in such cases the subject matter of the recommendation having been once absolutely devised away, it cannot be presumed that the testator intended to use the subsequent words of recommendation in a legatory sense, which would be to construe his will as inconsistent with itself in one and the same sentence.*" The language, which we have italicised, in the foregoing quotation is exactly applicable to the present case. Here the testator, after having, in the third clause of his will, devised his property to the children of his son, William J. Arnold, in terms precisely appropriate to the creation in them of an estate in fee simple absolute—to them, "their heirs and assigns, forever"—and after having designated the time when such property should be divided, "and each to have their share," adds these words of mere admonition: "And I admonish and charge my said grand-children that this gift is made in the hope and upon the trust that they will provide for their parents during their lives." It seems to us that these words thus addressed to the children amount to nothing more than the expression of a wish and hope that the children, after receiving their shares of the property, will provide for their parents, and that they cannot be regarded as creating any charge or affixing any trust, in a legal sense, upon the property previously devised to the children absolutely in fee simple, under the authority above

cited.   Indeed, the words "admonish" and "hope,"·while very appropriate to the expression of a wish that the children would perform their moral duty to their parents, would be singularly inappropriate to the expression of an intention to fix any legal "charge" or "trust" upon the property.

The same principle has been distinctly recognized and acted upon in the case of *Brunson* v. *King*, 2 Hill Ch., at page 490, where Chancellor Johnson, in delivering the opinion of the court, uses this language, in reference to the will of Andrew Hunter, which was then before the court for construction: "It will be observed, however, that this clause begins with, 'It is my wish,' and although these terms are frequently held to import a direct devise or bequest, or to create a trust (6 Cruise Dig., 144–204), and would generally so operate where the will contained nothing inconsistent with it; yet the rule is not so imperative as to compel us to do violence to the general intent, in giving them that effect.   In their general acceptation they import an inclination or disposition of the mind, not an act of the will; and it is, I think, very apparent that the testator intended them to be so understood here, at least so far as they appear to be inconsistent with the limitations of the deed [referring to a deed previously executed by the testator, and expressly recognized in his will].   The preceding clauses, it will be recollected, contained a final disposition of all his estate, real and personal, the deed, of the property described in it, and the residuary clause, of everything else that he possessed; and if this last clause is interpreted a direct bequest, it leads to that inconsistency and repugnancy which the rules of construction repudiate.   If taken in their ordinary acceptation, they are merely advisory, and render the will thus far consistent.   And this I take to be their true construction."   The case now under consideration is even stronger than the one just cited, for here there is no expression of a wish that any charge or trust shall be fixed *upon the property*, but the language used simply imports an admonition or charge *to the children*, accompanied by a hope and trust that they will perform their moral duty to their parents.   As Chancellor Johnson says, the words "are merely advisory."

We do not think that the case of *Bouknight* v. *Brown,* 16 S. C., 167, cited by counsel for W. J. Arnold, upon this point, is applicable here, for there the question was as to the construction of a will in which the testator had undertaken to make provision for his illegitimate children, inconsistent with the provisions of the act of 1795, and the question there presented was governed by different principles altogether from those which control here. The same remark may be made as to the case of *Fable* v. *Brown,* 2 Hill Ch., 378, where the question was as to the construction of a will in which the testator had undertaken, in violation of the well settled policy of the State, to make a provision by will for the benefit of certain of his slaves; and what was said there is not applicable to this case.

It only remains to consider the third question, whether the pleadings are so framed as to entitle the plaintiffs to an account from the said William J. Arnold, either as executor or as testamentary guardian. It is only necessary to say that we do not think so; but as the case has to go back anyhow, this defect can be remedied by amendment by making William J. Arnold a party formally, in one or both of said capacities, and by adding such allegations to the complaint as may be apt and proper to charge him as such, if the plaintiffs shall so desire.

The judgment of this court is, that the judgment of the Circuit Court be so modified as to conform to the views herein presented, and that the case be remanded to the Circuit Court for the purpose of carrying out the views herein announced, with leave to the plaintiffs, if they shall be so advised, to apply to that court for such amendments as may be proper.