## UNITED STATES v. 15,883.55 ACRES OF LAND IN SPARTANBURG COUNTY, S. C., et al.

### Civil Action No. 203.

District Court, W. D. South Carolina, Spartanburg Division.

June 24, 1942.

Horace L. Bomar, Jr., Sp. Asst. to U. S. Atty., of Spartanburg, S. C., for petitioner.

A. E. Tinsley, of Spartanburg, S. C., for defendants.

J. Davis Kerr, of Spartanburg, S. C., guardian ad litem for certain minor defendants.

WYCHE, District Judge.

In this condemnation proceeding, W. H. Hayes, R. H. Hayes and Lola H. Lewis, have made a motion for an order adjudicating title relative to Tracts Nos. 92, 102, 103, 105 (Part 1 & 2) and 105–A, embraced in this proceeding, and directing that any funds remaining on deposit and allocated to said tracts be immediately disbursed, and that judgments be entered forthwith for any deficiency between the amount of the respective deposits and verdicts. The matter was referred to Honorable Jesse W. Boyd, as Special Master, who has made his Findings of Fact and Conclusions of Law. The matter is now before me upon exceptions to the Master's Report by the Guardian ad Litem for the infant grandchildren of Sumpter Hayes. The facts are substantially as follows:

Sumpter Hayes died in September 16, 1931 leaving a will, which was admitted to probate on September 30, 1931. At the time of his death, he owned a tract of land referred to in his will as containing about four hundred acres. This tract is referred to in a subsequent deed by the Probate Judge to R. H. Hayes as containing four hundred, thirteen acres. In the above proceeding all of tract No. 102 listed in the name of W. H. Hayes and containing 60.8 acres, all of tract No. 103 listed in the name of Reuben H. Hayes, containing 109.1 acres, approximately 5 acres of No. 105–A, listed in the name of Lola H. Lewis, and approximately 231 acres of tract No. 105 (Part 1 & 2), listed in the name of W.

H. Hayes, constitute the Sumpter Hayes tract of approximately four hundred acres.

The will of Sumpter Hayes, after providing for the payment of debts and funeral expenses, provides:

"2nd. I will and bequeath to my daughter Lola A. Lewis a certain lot or parcel of land, situated in the above state and county, Beginning and running as follows, On an iron pin 3 † 0 corner for myself & J. H. West. Est. Thence N. 71. E. 10.75 to cr. I. P. 3 † N. on line ditch. Thence 3.26. E. 7.35 to cr. I. P. in road to Pacolet, S. C. Thence with said road the line N. 88½. W. 12.20 to cr. centre of old Union Road. Thence N 24½ W. 2.77 to beginning cor. containing (5⁴²⁄₁₀₀ a) Five & forty two one hundredths acres the same more or less, & Bounded by land of J. H. West Est. myself, Pacolet and Union roads.

"3rd. I will and bequeath the balance of my real Estate containing about (400 acres of land to my children as follows, viz. Roland Hayes, Reuben. H. Hayes, Blanche. A. League, Beula. .I. Rhinehart, Wilbur. H. Hayes, and Nunie. M. Isbel.-

"4th. I bequeath to my son Reuben. H. Hayes the tract or parcel of land known as L. A. Harmon tract containing about fifty acres, the same to be his equal, and full share of my Estate. To my other five children, viz. Roland. Hayes, Blanche A League, Beula. .I. Rhinehart, Wilbur H. Hayes, & Nunie. M. Isbel, I bequeath the Balance of my real Estate, containing about (350 acres) Three Hundred fifty acres, the same more or less. Each one to share and share alike. The same to be divided equally as to valuation & cts And it is also my desire at the death of my children this property to go to my grand-children in fee simple, and if any of my children die without issue, their holdings are to revert back to my Estate, & to my then legal heirs.

"5th. Whosoever attempts to break this will, forfeits his or her share in my estate.

"6th. And last I hereby constitute and appoint my sons, Reuben. H. Hayes, and Wilbur. H. Hayes to be executors without Bond, & not to receive commissions on the Estate, of this my last will and testament. * * *"

On December 4, 1931, the executors of the will filed a proceeding in the Probate Court for sale of real estate in aid of assets, making parties defendant all the children, and all the then living grandchildren of Sumpter Hayes. Pursuant to an understanding with his brothers and sisters, Reuben H. Hayes bid in the property at the Probate Judge's Sale in such proceeding at the nominal bid of $1,000, being an estimated amount sufficient, with the personal property, to pay the testator's debts. The Probate Judge made a deed to him for the whole tract described as four hundred, thirteen acres. About the same time they had a survey made dividing the place into seven tracts of approximately equal value. Tract No. 1 was the 5.42 acres described in the second paragraph of the testator's will, and this was assigned to Mrs. Lola H. Lewis. Tract No. 5 was the 55.23 acres, known as the Harmon Place, described in the first part of the fourth paragraph of the will, was assigned to Reuben H. Hayes. The other five tracts were parcelled among the other five children by drawing numbers from a hat. Roland Hayes drew No. 2, W. H. Hayes drew No. 3, Beula H. Rhinehart drew No. 4, Nunie H. Isbel drew No. 6, and Blanche H. League drew No. 7. The understanding was that each of them would pay one-seventh of the indebtedness of the estate, and upon their so doing, deed to the several lots drawn would be made by Reuben H. Hayes. Pursuant to this plan, deeds were made to Roland Hayes, to Wilbur Hayes, to Lola H. Lewis, and to Blanche H. League. It appears that pursuant to directions by Mrs. Rhinehart, deed for the lot drawn by her was made to W. H. Hayes. It appears also that Reuben H. Hayes had some negotiations with Mrs. Isbel to purchase her lot. She died before the negotiations were consummated, and the testimony is not very clear as to whether the transaction was consummated with her heirs, being two daughters, minors at the time. Since that time, one of these daughters has died, leaving surviving as her heirs at law, her husband, and her sister. At all events, legal title to the lot drawn by Mrs. Isbel, and also the lot allotted to Reuben H. Hayes has remained in him under the deed from the Probate Judge. In the meantime, Roland Hayes has died, and his heirs have conveyed the Roland Hayes tract to W. H. Hayes, and Blanche H. League has conveyed her tract to W. H. Hayes.

Such of the grandchildren of Sumpter Hayes as are now under the age of twenty-one years are represented in this proceeding by their guardian ad litem,

J. D. Kerr, Esq. He has appeared in person and vigorously and ably represented the interests of the wards, and filed a substantial and helpful brief. Some of these grandchildren had not been born at the time of the Probate Court proceeding to sell the land in aid of assets. Such of them as were under the age of twenty-one years were represented in that proceeding by their guardians ad litem, Reuben H. Hayes and Wilbur H. Hayes, who were executors of the estate, and whose personal interests were in conflict with the interest of the minors they were appointed to represent. Therefore, the proceeding in the Probate Court does not preclude the infant respondents from now asserting their claim to any rights they may have under the will of Sumpter Hayes, because their interests were not there protected in the manner provided by law. Rules 3 and 4 of the Probate Court provide that no person shall be appointed guardian ad litem "who has an interest adverse to that of the infant", and that the guardian ad litem shall "make the proper defense for the protection of the rights of the infant."

█ Filing an answer submitting the ward's interest to the protection of the Court, and taking no steps on behalf of the ward, is not compliance. Cagle v. Schaefer, 115 S.C. 35, 104 S.E. 321. In McIver v. Thompson, 117 S.C. 175, 108 S.E. 411, 417, the South Carolina Supreme Court vacated a sale on the ground that the person appointed guardian ad litem was the father of the infants, having an adverse interest, and a part of the proceeds of sale was applied to payment of his obligations, and none applied for the benefit of the infants. The Court concluded in that case that, "The rights of the infants were not protected in the manner required by law."

The testimony shows that the proceeding in the Probate Court whereby legal title to the whole property was made to Reuben H. Hayes was pursuant to a previous agreement among the seven children of Sumpter Hayes for each one to pay one-seventh of the debts of Sumpter Hayes and to receive one-seventh in value of the land, and that a survey was made for that purpose, and the home place willed to Lola H. Lewis was assigned to her, and the Harmon place willed to Reuben H. Hayes was assigned to him, and the other five lots allotted by drawing numbers out of a hat. The bid at the Probate Court sale did not and was not intended to represent the value of the land. The sum total of these transactions was division or partition in kind of the land according to the provision made therefor in the testator's will. The result of this transaction was to give to each the quantity and quality of estate provided for by the will.

At the time of his death Sumpter Hayes owned a tract of land containing (by survey subsequently made) 407.85 acres. His will made no reference to personal property and it has no residuary clause. By its four disposing paragraphs it, (1) directs payment of his debts, (2) gives to his daughter Lola H. Lewis, a specifically described 5.42 acres of the tract of land, (3) gives the balance of the tract to his other six children (naming them), and (4) directs that his son, Reuben H. Hayes shall have a specific fifty acres (the Harmon place) of the tract of land, and the other five children the remaining 350 acres to be divided equally as to value. All is plain up to this point, but here continuing as a part of Paragraph 4, and as a continuation of the sentence directing the land to be divided equally we find the following language: "And it is also my desire at the death of my children this property to go to my grand-children in fee simple, and if any of my children die without issue, their holdings are to revert back to my Estate, & to my then legal heirs." It is urged that this clause introduced by the words "and it is also my desire" is merely an expression of a wish, and is not testamentary. Tiencken v. Zerbst, 196 S.C. 438, 13 S.E. 2d 483; Jennings v. Talbert, 77 S.C. 454, 58 S.E. 420; Rowland v. Rowland, 29 S.C. 54, 6 S.E. 902; Arnold v. Arnold, 41 S.C. 291, 19 S.E. 670. In the cases cited there is much said about the inefficiency of precatory words to evidence testamentary intention. However, these cases involved wills where the words used (characterized as "precatory," which means prayerful or entreating) were in the nature of requests to beneficiaries that they make some particular use or disposition of the property. On the other hand, the definite rule is stated in Ellison v. Mattison, 112 S.C. 183, 98 S.E. 840, 842, where it is said: "It is true that the expressed 'desire' of the testator does not always of itself amount to a direction; it may or it may not amount to a direction according as the intention of the testator may be gathered from the whole instrument. A testator's expressed

562

and lawful desire ought, of course, to be carried out, unless it be inconsistent with other and stronger words contained in the instrument." In that case a will left the residue of an estate to be sold "and equally divided among my children", then there are directions as to the manner of division and settlement, and then another sentence is added to that: "Furthermore I desire that the portion of my estate that may fall to my daughters N. Caroline Mattison and Mary A. E. Ellison to be theirs during their lifetime and then to their children respectively forever." This was held to be a testamentary expression limiting the estate of Caroline and Mary to life.

The introduction of the clause by the words "it is also my desire" would not render the clause impotent as a testamentary disposition. If the language of this clause evidences a disposing intention as a part of the whole will it will be given effect according to judicial determination of what that intention · was. Wills are construed with the aid of a few well established rules of construction: (1) The law favors the early vesting of estates, (2) the will is construed as a whole, (3) testator's intention must be sufficiently evidenced by the language used as to leave no doubt, and the Court will make no speculation or conjecture as to what he may have intended, (4) of two inconsistent provisions the latter prevails, but only when it is as plain and decisive as the former, (5) an estate created by plain and unmistakable terms in one clause will not be cut down or enlarged by superadded words or clauses of doubtful import or failing to specify the manner of cutting down or enlarging the estate in as plain and unmistakable language as that by which the estate is created. Tiencken v. Zerbst, 196 S.C. 438, 13 S.E.2d 483; Walker v. Alverson, 87 S.C. 55, 68 S.E. 966, 30 L.R.A., N.S., 115; Smith v. Smith, 93 S.C. 213, 76 S.E. 468; Davenport v. Collins, 161 S.C. 387, 159 S.E. 787.

One of the most frequently cited cases is Walker v. Alverson, supra, in which the rule of construction is most clearly stated [87 S.C. 55, 68 S.E. 968, 30 L.R.A.,N.S., 115]: "When a gift is made in one clause of a will in clear and unequivocal terms, the quantity or quality of the estate given should not be cut down or qualified by words of doubtful import found in a subsequent clause. To have that effect, the subsequent words should be at least as clear in expressing that intention as the words in which the interest is given." The words used here are of very doubtful import, and are certainly not as clear in expressing an intention as the words in which the interest is given. An analysis of the language used leads to nothing but a multiplicity of speculations as to what the testator may have intended. The will says at the death of *my children,* did he intend all seven of them, the six named in the third paragraph, or the five to whom he gave the three hundred, fifty acre tract? The will says *this property,* did he intend to refer to all his real estate, including the 5½ acre tract, to the 400 acre tract, or to the 350 acres? The will says *my grandchildren,* did he intend all of his grandchildren as a class per capita, or in succession by families? Taken literally, the first clause would ultimately vest the fee in the testator's grandchildren as second takers, and the second clause would vest the fee in part of the land, in the testator's own children as ultimate takers. He could not give the fee to both.

It is obvious that the testator had some sort of anticipatory notion of placing some sort of limitation on his children's title, but such notion never matured into a clear disposing intention. The language used does not express a sustained thinking through of any understandable disposition and must be discarded in its entirety.

The Code of Laws of South Carolina 1932, Section 8923, provides as follows: "No words of limitation shall be necessary to convey an estate in fee simple by devise, but every gift of land by devise shall be considered as a gift in fee simple, unless such a construction be inconsistent with the will of the testator, expressed or implied."

The second and third paragraphs, and the first part of the fourth paragraph of this will are all in appropriate language to constitute devises in fee simple to the testator's children. There are no words of limitation and no words suggesting a smaller estate than a fee. It must be construed as a gift in fee simple *unless such a construction be inconsistent with the will of the testator, expressed or implied.* It is urged that the language used in the last clause of the fourth paragraph renders this construction *inconsistent with the will of the testator.* That clause is as follows: "And it is also my desire at the death of my children this property to go to my

grand-children in fee simple, and if any of my children die without issue, their holdings are to revert back to my Estate, & to my then legal heirs." If this language were sufficient to create an estate it would be inconsistent with the construction of the foregoing paragraphs as being a gift in fee simple. Under the statute the inconsistency must exist between the statutory construction and the *will of the testator,* and not merely between the statutory construction and some indefinite clause in the will which might raise an inference of inconsistency, but which is not within itself sufficient to constitute an essential part of the testator's disposing intention as a whole.

This statute has been before the court many times, and the rule applicable here was first stated in Howze v. Barber, 29 S. C. 466, 7 S.E. 817, 819, quoted with approval in Smith v. Smith, 93 S.C. 213, 76 S.E. 468. In the Howze case, it is said [29 S.C. 466, 7 S.E. 818]: "It is quite clear that if the first item of the will stood alone, that Mrs. Howze, under it, would take an estate in fee-simple * * *; for under our statute no words of inheritance are necessary to create such an estate by will, and the words used are amply sufficient to vest an absolute estate in her. * * * The rule, as we understand it, both of law and of common sense, is that, where an absolute and unqualified estate is first created in words which import absolute and uncontrollable ownership, words relied upon to show that the testator intended to cut down such an estate, or to affect it with any trust, *must not only be mandatory,* but must, in themselves, show the manner in which they are to operate, so that the purpose of the testator may clearly appear, how or in what degree he intended to cut down the estate previously created, * * *." (Italics added)

In the Smith case, supra, the testator's will gave certain lands and all personal property to his wife for life, and "after the death of my wife, all this property to go to my daughter, Ann E. Gray." By the next succeeding paragraph other lands were given to Ann E. Gray "and after her death, it is my desire that all the property, real and personal, shall be equally divided among my grandchildren and their heirs." In construing this will in the light of Section 8923 (then 2483) the court said that the words in the subsequent paragraph "do afford at least a fair ground

of inference that testator meant to include in those words of description the property given his daughter in the second as well as that given her in the third paragraph of his will, especially as all his personal property had been disposed of absolutely in the preceding paragraph. But the inference is doubtful, and not strong enough, under the rules of construction, to cut down the absolute estate in the preceding paragraph."

The same section (then 3571) was applied by the court in construing a will in Williams v. Gadsden, 109 S.C. 228, 95 S.E. 519. This will gave certain property to testator's daughter, Pauline McFaddin, "or if my daughter Pauline should outlive her husband, the said Robert C. McFaddin, and die leaving no child nor children by the present or any future marriage, or leaving such child or children they die unmarried or under the age of twenty-one years, then and in that case I give and bequeath the said portion of my daughter Pauline, namely, the plantation 'Waterloo' and the negroes above mentioned to my sons, Isaac P. Grimball and Thomas H. Grimball, their heirs and assigns forever." Pauline McFaddin died leaving a daughter. In construing this will as to provision for Isaac P. Grimball and Thomas H. Grimball, their heirs and assigns, and in the light of the statute (then 3571), it was held: "The property was Pauline's by the first grant; * * *. The limitation to Isaac and Thomas was to take effect in them only in the event Pauline left no child. * * * There is no need, therefore, to inquire if the limitation over to them upon any subsequent event was effective after the absolute estate had been already devised to Pauline."

Bomar v. Corn, 150 S.C. 111, 147 S.E. 659, 660, is a more recent case. The court was called upon to construe the will of Mary R. Bennett, which provided among other things: "I give devise and bequeath during their natural lives, to William A. Bennett and his children twenty six and two thirds Acres of land, to hold and defend the rights unto them forever against all persons claiming any part thereof." It was contended that "during their natural lives" was inconsistent with a fee simple, being created by this language there being no words of inheritance. In holding that William A. Bennett and his children took a fee simple, it was held: "3. Under section 5343 [now 8923] of the Code, words

564

of limitation (inheritance?) are not necessary to convey an estate in fee simple by devise; every devise shall be considered as one in fee simple, unless such a construction be inconsistent with the will. * * * The limitation 'during their natural lives' is inconsistent with the presumption under the statute that a fee-simple estate was intended; and it is inconsistent with the apparent absolute power of control and disposition given by the last clause of the paragraph. We do not think that a clause which is inconsistent with both that which precedes, and that which follows, should be deemed sufficient as creating such an inconsistency as would defeat the construction under the statute." (Italics added.)

The clause at the end of the fourth paragraph of the Hayes will does suggest an inference of an intention on the part of the testator to place limitations on his children's title; but the language used is not of itself sufficient to constitute testamentary disposition, and is not sufficiently clear to define what the inference would be; or to sustain the suggestion.

For the foregoing reasons the exceptions to the Special Master's Report will be overruled.